UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STACI METCALF, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 1:23-cv-00683-SEB-TAB |
| | ) |
| MICHELLE LYDAY, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANT CORTNEY DEMETRIS'S MOTION TO DISMISS AND MOTION FOR SANCTIONS**

Now before the Court are the Motion to Dismiss [Dkt. 14] and Motion for Sanctions [Dkt. 26] filed by Defendant Cortney Demetris, M.D.[1] Plaintiffs Staci Metcalf, individually and on behalf of minor children E.M., A.M., and O.M., and Brad Metcalf bring this action against several defendants, including Dr. Demetris, under 42 U.S.C. § 1983. This case arises from a report of suspected child abuse regarding E.M. made to the Indiana Department of Child Services ("DCS") by Dr. Demetris. Based on the report, the matter was investigated by DCS and a decision was made to file charges of child abuse and neglect against Plaintiffs, which allegations were later substantiated by the administrative law proceedings.[2] Plaintiffs allege that Dr. Demetris violated their

---

[1] Also pending before the Court is the Motion to Dismiss [Dkt. 16] filed by Defendants Lindsey Bruce, Michelle Lyday, and Michael McNear, which motion will be addressed in due course.
[2] Plaintiff Staci Metcalf's appeal of the administrative substantiation was originally dismissed but has since been reopened. DCS's appeal of the decision to reopen is currently pending. Neither side has sought a stay of this case or our consideration of the instant motion pending the resolution of the administrative appeals.

1

Fourteenth Amendment due process rights by making factual misrepresentations in her report to DCS and to law enforcement.

Dr. Demetris has moved to dismiss Plaintiffs' claim against her for failure to state a claim upon which relief may be granted. She also seeks the imposition of sanctions for what she claims was a factual error contained in Plaintiffs' complaint. For the reasons detailed below, we GRANT the motion to dismiss and DENY the motion for sanctions.

**Factual Background**[3]

Plaintiffs Staci and Brad Metcalf ("Plaintiffs" or the "Metcalfs") are a married couple with three minor children, O.M., A.M., and E.M. On the morning of February 28, 2022, Staci, a registered nurse, noticed some small bruises on four-month-old E.M.'s lower left side when changing his diaper. Compl. ¶ 16. Later that afternoon, E.M. began vomiting and reportedly did not eat much that evening. *Id.* ¶ 17. The next day, March 1, 2022, after E.M.'s babysitter notified Staci that E.M. was vomiting and lethargic, Staci took E.M. to the emergency room at Peyton Manning Children's Hospital in Indianapolis, Indiana, pursuant to the advice of E.M.'s pediatrician. *Id.* ¶¶ 18–19. At the hospital, medical professionals observed the bruising on E.M.'s body and discovered that E.M. had experienced a brain bleed, which required surgery to repair. *Id.* ¶ 20.

---

[3] In support of her motion to dismiss, Dr. Demetris cites many facts that extend beyond the allegations in the Metcalfs' complaint. We recount here only those facts contained in the complaint or that are otherwise permissible for consideration in ruling on a Rule 12(b)(6) motion. *See Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.") (citations omitted).

Dr. Demetris was on duty and serving as a member of the Child Protection Team at Peyton Manning on the day E.M. was brought into the emergency room. *Id.* ¶ 21. The Metcalfs allege in their complaint that the purpose of the Child Protection Team was to investigate allegations of child abuse or neglect, whose members "work[] for DCS as medical investigators in cases involving suspected child abuse and neglect." *Id.* ¶¶ 22–23. The complaint further alleges that, as part of the Child Protection Team, "[a] regular part of Dr. Demetris's employment was to act as a medical investigator on behalf of DCS to determine whether a child's injuries were the result of abuse or neglect." *Id.* ¶ 26. Dr. Demetris had worked in that capacity with DCS on "dozens of cases involving child abuse and neglect." *Id.* ¶ 27.

The Metcalfs claim that Dr. Demetris "did not provide any medical treatment to E.M.," (*id.* ¶ 25) but instead "act[ed] as a medical investigator on behalf of DCS," (*id.* ¶ 28) and in that capacity undertook an investigation into the cause of E.M.'s injuries to determine whether they were the result of child abuse or neglect. *Id.* ¶ 24. Upon the completion of her investigation, Dr. Demetris met with DCS and law enforcement personnel to discuss E.M.'s case, (*id.* ¶ 29), during which meeting, Dr. Demetris reported that E.M.'s injuries were the result of physical abuse that had occurred within the forty-eight hours prior to E.M.'s being brought to the emergency room (during which time the Metcalfs had been the primary adults caring for E.M.), despite her knowledge that E.M.'s neurosurgeons had diagnosed a brain injury that had occurred more than forty-eight hours prior which was not the result of physical abuse. *Id.* ¶¶ 31–52. Plaintiffs allege that Dr. Demetris knew her clinical conclusions were wrong when she reported them to DCS, and

that she intended DCS to rely on those opinions when determining whether allegations of child abuse should be substantiated against the Metcalfs and a CHINS case filed. *Id.* ¶¶ 53, 55. The complaint further alleges that, as a direct and intended result of Dr. Demetris's actions, DCS proceeded to substantiate the allegations of physical abuse against the Metcalfs and determined that E.M. must be removed from their home. *Id.* ¶¶ 61, 62.

## Legal Analysis

### I. Motion to Dismiss

#### A. Applicable Legal Standard

Dr. Demetris has filed her motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In this procedural context, the Court accepts as true all well-pled factual allegations in the complaint and draws all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). The Court may also consider documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information properly subject to judicial notice. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted). The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* FED. R. CIV. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

  **B. Discussion**

  The first basis for Dr. Demetris's motion to dismiss is that the Metcalfs have failed to adequately allege that she is a state actor as is required for liability to attach under § 1983. To bring a claim under § 1983 against Dr. Demetris, a private individual employed by a private hospital, the Metcalfs must establish that she was acting under color of law. Without an act "fairly attributable to the State," there can be no action under § 1983. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quotation marks and citation omitted). There are several situations when private conduct takes on the color of law, including as is alleged here when there is "such a close nexus between the state and the challenged action that seemingly private behavior may be fairly treated as that of the state itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (citation and quotation marks omitted). This test, like the other state action tests, is "not cut-and-dried" but rather "multi-faceted and fact-sensitive." *Eastes v. ACS Human Servs., LLC*, 822 F. Supp. 2d 843, 845–46 (N.D. Ind. 2011) (citing *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 816 (7th Cir. 2009)).

  Plaintiffs argue that Dr. Demetris is a state actor by reason of her role in investigating child abuse as a member of Peyton Manning Children's Hospital's Child Protection Team and reporting her opinions to DCS. Specifically, Plaintiffs allege that a "regular part of Dr. Demetris's employment was to act as a medical investigator on behalf of DCS" (Compl. ¶ 27); that Dr. Demetris did not provide medical treatment to E.M. but

instead only investigated the cause of E.M.'s injuries for purposes of determining whether they were the result of child abuse; that she was acting as a medical investigator on behalf of DCS when she performed that investigation; and that she made misrepresentations in reporting her findings to DCS and intended for DCS to rely on those misrepresentations in determining whether allegations of child abuse against the Metcalfs could be substantiated to justify or require initiating a CHINS case.

It is well-established that hospitals and doctors who report suspected child abuse are not state actors simply because they comply with state law reporting requirements. *See Evans v. Torres*, No. 94 C 1078, 1996 WL 5319, at *5 (N.D. Ill. Jan. 4, 1996) ("[I]ndividuals do not become state actors merely by acting in accordance with state statutes."); *see also Hayes v. Narang*, No. 19-cv-03596, 2020 WL 4815909, at *6, *7 (N.D. Ill. Aug. 18, 2020) (collecting cases). Applying this rationale, district courts in our circuit have found allegations similar to those made by Plaintiffs here, to wit, that the defendant doctors worked as child abuse specialists for private hospitals and reported their findings and recommendations to DCS, insufficient to allege state action for purposes of § 1983 liability, at least in the absence of any facts suggesting that DCS influenced, controlled, or directed the doctors' actions and opinions. *See, e.g.*, *Hayes*, 2020 WL 4815909, at *6–*7 (holding that allegations that the defendant doctor was hired "to investigate suspected incidents of child abuse" and was "expected to work with law enforcement agencies and [the Illinois Department of Child and Family Services ("DCFS")] to remove children from their parents' custody in incidents of child abuse," so that his "involvement with [the child] was that of an investigator, not a treating doctor"

6

were not sufficient to deem him a state actor when there was no allegation that his medical findings were influenced or controlled by DCFS); *Dickman v. Rosado*, No. 16 C 9448, 2019 WL 3728698, at *2 (N.D. Ill. Aug. 1, 2019) (allegation that defendant doctors "work[ed] as child abuse specialists … on the Protective Services Team" at their private hospital employer and "reported [their] findings and then ma[de] recommendations to the Illinois Department of Child and Family Services" was insufficient to allege state action because doctors must report child abuse to the state).

  Here, Plaintiffs do not allege, for example, that Dr. Demetris's investigation and diagnoses of E.M.'s medical condition were initiated at the direction of or under the control of DCS; to the contrary, the parties agree that Dr. Demetris began consulting on E.M.'s case *before* DCS was ever involved.  Accordingly, there is no indication that Dr. Demetris's involvement in E.M.'s case came at the behest of DCS or that she had consulted with DCS prior to conducting her initial investigation into the cause of E.M.'s injuries and suspecting abuse.  Nor is there any allegation that DCS was at all involved in Dr. Demetris's investigation prior to her providing her initial report of suspected child abuse or that DCS attempted to influence or direct her examination or conclusions in any way.  Plaintiffs allege that Dr. Demetris intended for DCS to rely on her medical opinions in deciding whether to file a CHINS case and/or substantiate child abuse allegations against Plaintiffs.  Assuming she so "intended," that allegation falls short of a claim that the substance of Dr. Demetris's medical opinions was in any way controlled or influenced by DCS.  Finally, Plaintiffs do not allege that a contractual relationship existed between Dr. Demetris and DCS or that Dr. Demetris was paid through state funds.

7

Although Plaintiffs cursorily allege that Dr. Demetris and the other members of the Peyton Manning Children's Hospital Child Protection Team "work[] for DCS as medical investigators" (Compl. ¶ 23), and that when she examined E.M. Dr. Demetris was not providing medical treatment but was instead solely "act[ing] as a medical investigator on behalf of DCS" (*id.* ¶ 28), Plaintiffs' complaint lacks factual support for these otherwise conclusory allegations. Without any facts to show or even to suggest that DCS in any way influenced, controlled, or directed Dr. Demetris's actions and opinions, Plaintiffs' barebones allegations that Dr. Demetris was a child abuse specialist who conducted a medical investigation into the nature of E.M.'s injuries and presented her medical opinions to DCS, fall short of plausibly alleging state action.

Plaintiffs contend that their allegations as to state action are analogous to those determined to be sufficient in *Mabes v. McFeeley*, No. 1:21-cv-02062-JRS-DLP, 2022 WL 20357990 (S.D. Ind. Sept. 22, 2022). A careful review of *Mabes* reveals that the facts are significantly different from those presented in the case at bar. There, DCS was aware of the case *before* the defendant doctor became involved, which gave rise to the claim that the doctor was specifically assigned to provide a medical opinion for DCS only *after* the initial child abuse report had been made by the child's treating physicians and that the defendant doctor's medical evaluation was performed "at the direction" of DCS. In addition, the plaintiff alleged that the doctor acted only as an investigator, not as a treating physician; that the doctor reported to DCS, and her work was intended to benefit DCS; and that the doctor's involvement with DCS extended beyond the initial child abuse report and after the children had been removed from the home. The *Mabes* Court

8

concluded that "*[a]ll* of the above alleged facts combine[d] to shape the Court's judgment" that the doctor could not be described "as anything other than a medical investigator for DCS." *Id.* at *9 (emphasis added).

The Metcalfs attempt to frame their case against Dr. Demetris to mirror that presented in *Mabes*, but beyond a claim that Dr. Demetris did not provide medical treatment,[4] all the remaining factual allegations before us here are distinguishable. Unlike the doctor in *Mabes*, Dr. Demetris examined E.M. which informed her suspicion of child abuse, all of which occurred prior to DCS's involvement in the case. Dr. Demetris is not alleged to have been assigned to E.M.'s case for the purpose of assisting DCS, and there is no allegation that DCS in any way directed, influenced or controlled

---

[4] Dr. Demetris's vehement denial of the truth of this allegation relies on facts and documents beyond our purview in the context of a Rule 12(b)(6) motion. The detailed factual recitation in Dr. Demetris's far exceeds and expands upon the cited paragraphs of the complaint. For example, Dr. Demetris cites paragraph 19 of the complaint for the following proposition: "E.M. was initially seen by Jason Little, M.D. (pediatric emergency medicine physician) at approximately 4:30 p.m.[,]" while paragraph 19 of the complaint states only that: "Staci picked E.M. up from the babysitter and called E.M.'s pediatrician, who told Staci to take E.M. to the emergency room at Peyton Manning." Neither Dr. Little's name nor the time E.M. arrived at the hospital appears anywhere in the complaint. Another example relates to paragraph 20 of the complaint, which states: "At the hospital, medical professionals also noted the bruising and discovered that E.M. had a brain bleed. A surgery was performed on E.M. to address the brain injury." Citing only this paragraph from the complaint, Dr. Demetris's factual recitation includes nearly two pages of detailed facts regarding specific tests that Dr. Demetris ordered for E.M., medical findings resulting from those tests, and discussions that allegedly occurred between Dr. Demetris and other medical professionals regarding E.M.'s care, none of which is mentioned in the complaint. Although *plaintiffs* in opposing a Rule 12(b)(6) motion "may elaborate on [their] factual allegations so long as the new elaborations are consistent with the pleadings," the moving party has much less flexibility and may rely "only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky*, 675 F.3d at 746 n.1. Dr. Demetris has put forth no argument that the elaborations she has included in her briefing may be permissibly considered by the Court at this stage of the litigation. Accordingly, we accept as true for purposes of the motion to dismiss that Dr. Demetris was not treating E.M. but instead investigating the cause of E.M.'s injuries.

9

her investigation and medical opinions. Dr. Demetris's service as a member of the private hospital's Child Protection Team and her subsequent report to DCS of her allegedly misleading conclusions regarding the timing of E.M.'s injuries and her belief that they were caused by physical abuse, without more, does not support a plausible inference of the kind of close nexus between Dr. Demetris's conduct and the State that is required to establish state action. *See Hayes*, 2020 WL 4815909 (holding that allegations that doctor was hired to perform child abuse investigations and made misleading report to Illinois DCFS regarding the "time of origin" of the child's injuries such that only the parents could have been responsible were not sufficient to plausibly allege state action without any allegations indicating that DCFS directed, influenced, or controlled the doctor's investigation and findings). Accordingly, Dr. Demetris's motion to dismiss is <u>GRANTED</u> without prejudice.

## II.     Motion for Sanctions

Also before the Court is Dr. Demetris's motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Dr. Demetris seeks sanctions against Plaintiffs on grounds that Paragraph 25 of Plaintiffs' complaint, which alleges that "Dr. Demetris did not provide any medical treatment to E.M." is "categorically false and being presented for a false purpose." Dkt. 26 at 1. "Under Rule 11 a court may impose sanctions for misrepresentations made by a party or its attorney." *Nail v. Tarlton*, No. 1:23-CV-247-GSL-SLC, 2024 WL 3495034, at *4 (N.D. Ind. July 18, 2024) (citing FED. R. CIV. P. 11(c)(1)). The Court has discretion whether to award sanctions and the movant must satisfy the "high burden of showing that Rule 11 sanctions are warranted." *In re Dairy*

*Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 860 (N.D. Ill. 2015) (quoting *Lundeen v. Minemyer*, No. 09 C 3820, 2010 WL 5418896, at *3 (N.D. Ill. Dec. 17, 2010)). In considering whether sanctions are appropriate, "[t]he court must undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc. v. Office & Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (citation and internal quotation marks omitted). "To assess the reasonableness of a party's inquiry into the factual basis of its claims, the test is whether 'competent attorneys performing a reasonable investigation could not have believed in the merit of the position taken in the complaint.'" *In re Dairy Farmers of Am.*, 80 F. Supp. 3d at 860 (quoting *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993)).

Dr. Demetris argues that sanctions against Plaintiffs[5] are warranted here based on the complaint's demonstrably false allegation that she provided no medical treatment to E.M. In support of this position, Dr. Demetris cites, among other things, E.M.'s medical records which list her as both the "admitting" and "attending physician" and which document her examination of E.M., as well as several diagnostics tests that she ordered, performed, and reviewed in providing medical services to E.M., and consultations she had with other medical professionals in determining the suspected cause of E.M.'s injuries. *See* Dkt. 26-4. Dr. Demetris argues that, based on these facts, no competent attorney could have believed that she "did not provide any medical treatment to E.M.,"

---

[5] We note that, although Dr. Demetris seeks sanctions against "Plaintiffs," the conduct of which she complains is based on Plaintiffs' counsel's framing of the complaint.

and thus, that Defendant's counsel must have included that allegation in the complaint only for the improper purpose of attempting to "circumvent" the analysis set forth in *Hayes* and *Evans* and to have the Court "misapply" the analysis in *Mabes* on the question of whether Dr. Demetris was a state actor. Dkt. 39 at 1 n.1.

Plaintiffs rejoin that sanctions are not warranted, citing the fact that Plaintiffs' counsel consulted medical experts prior to filing the complaint who provided their opinion that diagnostic services such as those provided by Dr. Demetris and an assessment of whether abuse occurred are not considered "medical treatment." Dkt. 35-2 ¶¶ 5–6. Plaintiffs argue that this understanding is also consistent with the definition of the phrase set forth in the dictionary and federal regulations, which indicates that the term is reserved for "the management and care of a patient to combat disease or disorder," Dkt. 35 at 3 (quoting 29 C.F.R. 1904.7(b)(5)(i)), or the "management and care to prevent, cure, ameliorate, or slow progression of a medical condition," Dkt. 35 at 3 (quoting Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/treatment (last visited Sept. 16, 2024)). Accordingly, Plaintiffs' counsel maintains that the statement as included in the complaint is not categorically false nor was it was offered for any improper purpose and should not be sanctioned.

The parties' differing opinions regarding what constitutes "medical treatment" is an argument over semantics, since there is no dispute as to the nature and kind of specific healthcare services that were provided by Dr. Demetris, only with regard to how they should be characterized. Given Plaintiffs' counsel's explanation that, prior to including the challenged statement in the complaint, he conducted an investigation into the term

12

"medical treatment" that involved his consultations with multiple physicians some of whom opined that Dr. Demetris's actions would fall outside their definition of that term, we cannot say that "a reasonable inquiry into the facts and law would have revealed the [complete] frivolity of the position," *McGreal v. Village of Orland Park*, 928 F.3d 556, 560 (7th Cir. 2019), or that Plaintiffs or their counsel "should have known that [their] position [was] groundless." *Cuna Mut. Ins. Soc.*, 443 F.3d at 560 (citation and internal quotation marks omitted). Thus, we do not find that the inclusion of the challenged statement in Plaintiffs' complaint rises to the level of being sanctionable conduct. Accordingly, Dr. Demetris's motion for sanctions is <u>DENIED</u>.

### III. Conclusion

For the reasons detailed above, Defendant Demetris's Motion to Dismiss [Dkt. 14] is <u>GRANTED</u> without prejudice and her Motion for Sanctions [Dkt. 26] is <u>DENIED</u>. If Plaintiffs opt not to file an amended complaint that cures the deficiencies addressed in this order within forty (40) days, our dismissal will be converted to a dismissal with prejudice.

IT IS SO ORDERED.

Date: 9/17/2024

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Beau Browning
Riley Bennett Egloff LLP
bbrowning@rbelaw.com

Alexander Robert Carlisle
OFFICE OF THE ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov

Brad A. Catlin
Williams Law Group, LLC
brad@williamsgroup.law

Stephanie Michelle Davis
Office of Attorney General Todd Rokita
stephanie.davis@atg.in.gov

Alexis Jenkins
Riley Bennett Egloff, LLP
ajenkins@rbelaw.com

Courtney D Mills
Riley Bennett Egloff LLP
Cmills@rbelaw.com