UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STACI METCALF, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 1:23-cv-00683-SEB-TAB |
| | ) |
| MICHELLE LYDAY, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE**

Now before the Court is the Motion to Dismiss [Dkt. 16] filed by Defendants Michelle Lyday, Lindsey Bruce, and Michael McNear. Plaintiffs Staci Metcalf, individually and on behalf of E.M., A.M., and O.M., minor children, and Brad Metcalf have brought this action against Defendants Lyday, Bruce and McNear, all employees of Indiana's Department of Child Services ("DCS") (collectively, the "DCS Defendants"), alleging that the DCS Defendants violated their Fourteenth Amendment rights when they misrepresented facts regarding their child's injuries to the Court in a child in need of services ("CHINS") petition.[1]  For the reasons detailed below, the DCS Defendants' Motion to Dismiss is GRANTED without prejudice.

---

[1] Following the resolution of Plaintiff Staci Metcalf's administrative appeal of the child abuse substantiation against her, Plaintiffs have dropped their claim that Defendants violated their Fourteenth Amendment rights in substantiating child abuse allegations against them. *See* Dkt. 83.  Accordingly, we do not address that claim further.

## Factual Background

We summarize here the underlying facts again for purposes of clarifying our current ruling. Plaintiffs Staci and Brad Metcalf ("Plaintiffs" or the "Metcalfs") are a married couple with three minor children, O.M., A.M., and E.M. On the morning of February 28, 2022, Staci, a registered nurse, noticed some small bruises on four-month-old E.M.'s lower left side when changing his diaper. Compl. ¶ 16. Later that afternoon, E.M. began vomiting and reportedly did not eat much that evening. *Id.* ¶ 17. The next day, March 1, 2022, after E.M.'s babysitter notified Staci that E.M. was vomiting and lethargic, Staci took E.M. to the emergency room at Peyton Manning Children's Hospital in Indianapolis, Indiana, pursuant to the advice of E.M.'s pediatrician. *Id.* ¶¶ 18–19. At the hospital, medical professionals observed the bruising on E.M.'s body and discovered that E.M. had experienced a brain bleed, which required surgery to repair. *Id.* ¶ 20.

Dr. Cortney Demetris was on duty and serving as a member of the Child Protection Team at Peyton Manning on the day E.M. was brought into the emergency room. She was called upon to begin an investigation into the cause of E.M.'s injuries to determine whether they could be the result of child abuse or neglect. *Id.* ¶¶ 21, 24. Upon completing her investigation, Dr. Demetris met with the DCS Defendants and law enforcement to discuss E.M.'s case and to provide her medical opinions regarding the likely cause of E.M.'s injuries. *Id.* ¶ 29. At that meeting, Dr. Demetris told the DCS Defendants that it was her opinion that E.M.'s medical condition was the result of physical abuse that had occurred within the forty-eight hour period prior to E.M.'s arrival in the emergency room and that E.M.'s condition was the result of a violent acceleration

2

or deceleration force and was not adequately explained by pre-existing medical conditions. *Id.* ¶¶ 31–33. Plaintiffs allege that the DCS Defendants relied on Dr. Demetris's allegedly inaccurate medical opinions when DCS filed a petition seeking to have E.M. designated a CHINS. *Id.* ¶ 59. Alternatively, Plaintiffs allege that the DCS Defendants misrepresented Dr. Demetris's opinions internally with DCS colleagues as well as externally to the state court presiding over the CHINS proceedings, and that, as a direct and intended result of these misrepresentations, E.M. was removed from Plaintiffs' home. *Id.* ¶¶ 60–61.

Based on these facts, Plaintiffs filed this lawsuit against the DCS Defendants,[2] alleging that their actions violated Plaintiffs' due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution. Now before the Court is the DCS Defendants' motion to dismiss Plaintiffs' claims against them. That motion is fully briefed and ripe for ruling.

## Legal Analysis

The DCS Defendants assert that Plaintiffs' claims against them must be dismissed because, first, they are absolutely immune from Fourteenth Amendment liability for any conduct arising from their involvement with the judicial process, and second, the complaint fails to plausibly allege that the DCS Defendants engaged in any wrongdoing sufficient to violate Plaintiffs' Fourteenth Amendment rights. Plaintiffs rejoin that absolute immunity does not bar their claims against the DCS Defendants for actions they

---

[2] Dr. Demetris is also named a defendant in this matter. On September 17, 2024, the Court dismissed Plaintiffs' claims against her without prejudice.

took outside the judicial process, and that, when viewed as true, the facts alleged in the complaint plausibly state a Fourteenth Amendment violation.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "The Supreme Court has held that the Fourteenth Amendment's Due Process Clause shields certain aspects of the parent-child relationship from state interference[,]" including "a parent's interest in the 'care, custody, and management' of his children." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 821 (7th Cir. 2022) (internal citations and punctuation omitted); *accord Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1018 (7th Cir. 2000) ("The Supreme Court has long recognized as a component of substantive due process the right to familial relations."). This substantive component of due process "provides heightened protection against government interference with certain fundamental rights and liberty interests[,]" which includes the right of parents "to bear and raise their children…." *Brokaw*, 235 F.3d at 1018.

This constitutional protection of parents is not an "absolute" right, however; it "must be balanced against the state's interest in protecting children from abuse." *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478 (7th Cir. 2011) (quotation marks and citation omitted). Thus, "a state has no interest in protecting children from their parents unless it has some definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is imminent danger of abuse." *Brokaw*, 235 F.3d at 1019 (citation omitted). "A reasonable suspicion requires more than

4

a hunch but less than probable cause…." *United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010) (citations and internal quotation marks omitted).

With respect to the constitutional guarantee of procedural due process, "the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Brokaw*, 235 F.3d at 1020 (internal citations and quotations omitted). "[N]o matter how much process is required, at a minimum it requires that government officials not misrepresent the facts in order to obtain the removal of a child from his parents." *Id.* "Minimally, it also means that government officials will not remove a child from his home without an investigation and pre-deprivation hearing resulting in a court order of removal, absent exigent circumstances." *Id.* (citation omitted).

Here, Plaintiffs allege that the DCS Defendants relied on Dr. Demetris's allegedly erroneous medical opinions when they filed a petition seeking to have E.M. designated a CHINS. Compl. ¶ 59. Alternatively, Plaintiffs allege that the DCS Defendants misrepresented Dr. Demetris's medical opinions "both within DCS and to the state court overseeing the CHINS proceedings." *Id.* ¶ 60. As a result of these unconstitutional acts by DCS, E.M. was subsequently removed from Plaintiffs' home for a period of time "[a]s a direct and intended result of Defendants' actions." *Id.* ¶ 61.

To the extent that Plaintiffs argue that the DCS Defendants violated Plaintiffs' Fourteenth Amendment rights by relying on Dr. Demetris's allegedly erroneous medical opinions in initiating the CHINS proceeding, that claim fails. The complaint alleges that

5

Dr. Demetris, a medical professional specializing in child abuse, informed the DCS Defendants that E.M.'s injuries were caused by physical abuse, to wit, likely a violent acceleration/deceleration force that occurred within the 48-hours prior to when the child was taken to the hospital.  The complaint further alleges that Dr. Demetris told the DCS Defendants that those injuries could not be adequately explained by pre-existing medical conditions and that the doctor understood that Plaintiffs were the sole caregivers of the child during the previous two days.  Finally, the complaint alleges that Dr. Demetris intended for the DCS Defendants to rely on her medical opinions and that the DCS Defendants did in fact rely on those opinions, resulting in the temporary removal of E.M. from Plaintiffs' care.

     As explained above, substantive due process requires only that caseworkers have "some definite and articulable evidence giving rise to a reasonable suspicion of past or imminent danger of abuse before they may take a child into protective custody." *Hernandez*, 657 F.3d at 478 (internal quotation marks and citation omitted).  The medical opinions of Dr. Demetris certainly constitute such evidence, and, although Plaintiffs allege that those opinions were erroneous, there are no allegations in the complaint that could support a plausible inference that the DCS Defendants knew or should have known that Dr. Demetris's opinions were erroneous.  Without such, the only plausible inference available from the above-described allegations is that the DCS Defendants' reliance on Dr. Demetris's medical opinions was reasonable and not violative of Plaintiffs' substantive due process rights.  Nor are the allegations in Plaintiffs' complaint sufficient to properly frame a procedural due process claim because Plaintiffs do not allege that the

DCS Defendants' reliance on Dr. Demetris's medical opinions resulted in any procedural violations, such as the lack of an investigation or hearing prior to E.M.'s removal from their care.

Alternatively, Plaintiffs allege that the DCS Defendants misrepresented each of Dr. Demetris's medical opinions "within DCS and to the state court overseeing the CHINS proceeding" in order to effect the removal of E.M. from Plaintiffs' care.  While a caseworker's misrepresentation of evidence in removal proceedings could be violative of the Fourteenth Amendment's substantive and/or procedural due process guarantees, Plaintiffs' allegations of misrepresentations here are wholly conclusory and too vague to plausibly state such a claim.  The complaint fails to identify the testimony or evidence that was allegedly fabricated by the DCS Defendants, to specify the nature of their alleged misrepresentations other than to allege that they misrepresented Dr. Demetris's medical opinions (all of which implicated Plaintiffs in the abuse of E.M.),[3] lay out to whom they made these misrepresentations, their role(s) in the removal proceedings, or how their misrepresentations led to E.M.'s removal.  Lacking *any* such supportive factual allegations, the complaint's deficiencies as to factual details sufficient to state either a substantive or procedural due process claim plausible on its face based on the DCS

---

[3] We note that it is unclear how misrepresenting Dr. Demetris's opinions would have hurt Plaintiffs, as they allege that Dr. Demetris erroneously opined that physical abuse was the cause of E.M.'s injuries, that the injuries occurred within 48-hours of E.M.'s arrival at the hospital, and that she understood Plaintiffs to be E.M.'s only caregivers during that time.  Accordingly, misrepresenting Dr. Demetris's opinions would seem only to have benefitted Plaintiffs.

Defendants' alleged misrepresentation of Dr. Demetris's medical opinions dooms its survival.[4]

## Conclusion

For the reasons detailed above, the DCS Defendants' Motion to Dismiss [Dkt. 16] is <u>GRANTED</u>, but for now without prejudice. If Plaintiffs opt not to file an amended complaint that cures the deficiencies addressed in this order within forty (40) days, our dismissal will be converted to a dismissal with prejudice.

IT IS SO ORDERED.

Date: _____3/19/2025_____             _____
                                          SARAH EVANS BARKER, JUDGE
                                          United States District Court
                                          Southern District of Indiana

---

[4] Because we have found that Plaintiffs' complaint fails to state a plausible claim for relief and is dismissed on those grounds, we need not and do not address to what extent the DCS Defendants' may be entitled to absolute immunity in this context. *See Mabes v. McFeeley*, No. 1:21-cv-02062-JRS-MKK, 2023 WL 8878427, at *4–*5 (S.D. Ind. Dec. 22, 2023) (collecting cases and discussing the scope of absolute immunity for social workers), *appeal docketed*, No. 24-1082 (7th Cir. Jan. 18, 2024).

Distribution:

Alexander Robert Carlisle
OFFICE OF THE ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov

Brad A. Catlin
Williams Law Group, LLC
brad@williamsgroup.law

Stephanie Michelle Davis
Office of Attorney General Todd Rokita
stephanie.davis@atg.in.gov